■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANCIS J. PELKEY, Appellant. [879 NYS2d 842]—

Stein, J. Appeal from a judgment of the County Court of Clinton County (Ryan, J.), rendered May 21, 2008, convicting defendant upon his pleas of guilty of the crimes of identity theft in the first degree (two counts), criminal possession of a forged instrument in the second degree (three counts), criminal possession of stolen property in the fourth degree (three counts) and grand larceny in the fourth degree (three counts).

Defendant stole his father-in-law's[1] identity and used it to procure several loans. He thereafter pleaded guilty to identity theft in the first degree in satisfaction of a superior court information (hereinafter SCI) charging him with that crime and the crime of grand larceny in the third degree. The plea was made in exchange for a prison sentence of 2 to 4 years plus restitution. Defendant fled the jurisdiction prior to sentencing and was found in Utah, where he was arrested pursuant to a warrant issued as a result of his failure to appear at sentencing. Prior to leaving the state, defendant stole another person's identity to obtain money to fund his departure. In connection therewith, defendant pleaded guilty to each count of a 10-count indictment for which he received a prison sentence of 3½ to 7 years on each count to run concurrently with each other but consecutive to the sentence imposed for the conviction of the crime in the SCI,[2] plus restitution in an amount to be determined by the Clinton County Probation Department. He also received the People's agreement to forgo pursuit of federal charges against him or his wife, who arguably aided him in fleeing from New York. Defendant was sentenced, as a second felony offender, in accordance with his agreements and restitution was set without a hearing in the total amount of $81,468.52, which included extradition charges of $1,956.98 incurred by the Clinton County District Attorney's office. Defendant now appeals.

We reject defendant's contention that he was entitled to a hearing on his postsentencing motion to withdraw his guilty pleas. Defendant, while represented by counsel with whom he had expressed his satisfaction, made a detailed allocution to the crimes of which he was convicted and stated that his pleas were not coerced. Defendant's subsequent claims that he felt coerced by the People's threats to prosecute his wife are unavailing, as "[t]he prosecutor is free to dictate the terms under which a plea will be accepted" (*People v Eaddy*, 200 AD2d 896, 897 [1994], *lv*

---

1. Although at the time of the theft of Gary Freeman's identity defendant was engaged to Freeman's daughter, he later married her.

2. For this conviction, after reaffirming his guilty plea, defendant received an enhanced prison sentence of 3½ to 7 years plus restitution in the amount of $46,121.18.

*denied* 83 NY2d 852 [1994]), including consequences relating to alleged criminal conduct of a family member, and defendant was free to reject the plea offer (*see People v Seaberg*, 74 NY2d 1, 9 [1989]). Based on our review of the entire record before us, we are convinced that defendant's pleas were made knowingly, intelligently and voluntarily and find no abuse of discretion in County Court's summary denial of defendant's motion (*see People v McMillan*, 55 AD3d 1064, 1065-1066 [2008], *lv denied* 11 NY3d 899 [2008]; *People v Wyant*, 47 AD3d 1068, 1069 [2008], *lv denied* 10 NY3d 873 [2008]; *People v Murray*, 25 AD3d 911, 912 [2006], *lv denied* 6 NY3d 896 [2006]).

Nor do we discern any error in County Court's determination that defendant was subject to a predicate felony offense. The People established "beyond a reasonable doubt the existence of [a] previous felony conviction" (*People v Harris*, 61 NY2d 9, 15 [1983]), thus shifting the burden to defendant to specifically allege and prove facts demonstrating that the prior felony conviction was unconstitutionally obtained (*see* CPL 400.21; *People v Harris*, 61 NY2d at 15). Defendant's general assertion that his previous conviction should not have been a felony was insufficient to warrant a hearing (*see* CPL 400.21).

We agree, however, with defendant's contention that the award of restitution was contrary to law.[3] First, County Court improperly relied entirely on the report of the Probation Department to ascertain the amount of restitution. In making a finding as to the dollar amount of the fruits of a defendant's offense, the court may rely on the Probation Department as a preliminary factfinder, but may not rely solely on the Probation Department's recommendations or delegate to the Probation Department its authority to set the amount of restitution; the court must make the final determination based on record evidence (*see* Penal Law § 60.27; *People v Consalvo*, 89 NY2d 140, 144 [1996]; *People v Fuller*, 57 NY2d 152, 158-159 [1982]; *People v Frisco*, 221 AD2d 779, 780 [1995]). When the record evidence is insufficient to support such a finding, County Court must hold a hearing (*see People v Consalvo*, 89 NY2d at 144-145; *People v Harrington*, 3 AD3d 737, 739 [2004]). Thus, notwithstanding the People's contention here that defendant agreed to pay restitution as established by the Probation Department, defendant cannot waive a hearing to determine the amount of restitution in the absence of facts in the record establishing a basis upon which County Court could determine the value of

---

**3.** We note that our review is not barred by defendant's failure to preserve his claims at the sentencing proceeding (*see People v Fuller*, 57 NY2d 152, 156 [1982]; *People v Casiano*, 8 AD3d 761, 762 [2004]).

the fruits of his offenses (see *People v Consalvo*, 89 NY2d at 144-145; *People v Fuller*, 57 NY2d at 156; *People v Casiano*, 8 AD3d 761, 762 [2004]). The only record evidence of such amount are defendant's statements in his plea allocution that he took in excess of $9,000. It is evident that, in setting the amount of restitution, County Court relied entirely on the Probation Department's findings which, although generally admissible (see CPL 400.30), were not sufficiently detailed or substantiated to support a finding by the court that the total amount alleged by the Probation Department was owed.[4]

The award of extradition costs as part of the restitution was also unsupported by law. Extradition costs are normal operating costs of the law enforcement agency—which is not considered a "victim" of defendant's crime—and, therefore, are not ordinarily part of restitution (see *People v LaValley*, 272 AD2d 786, 786 [2000], *lv denied* 95 NY2d 906 [2000]; *People v La Fave*, 265 AD2d 740, 742 [1999], *lv denied* 94 NY2d 881 [2000]). Although a defendant may agree to pay such costs as part of a plea agreement (see CPL 570.56; *People v Burke*, 47 AD3d 1161, 1161 [2008]; *People v Perry*, 261 AD2d 650, 650-651 [1999], *lv denied* 93 NY2d 1024 [1999]), there is no record evidence that defendant did so here.

We are precluded from reviewing defendant's claim that the sentences imposed for his convictions of the crimes charged in the indictment—including the enhanced sentence imposed for the first count of the SCI—were harsh and excessive by virtue of the valid waiver of appeal that he executed in connection with his pleas to those crimes (see *People v Burt*, 57 AD3d 1171 [2008]; *People v Schmidt*, 57 AD3d 1104 [2008]).

Cardona, P.J., Kavanagh and McCarthy, JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as made an award of restitution; matter remitted to the County Court of Clinton County for a restitution hearing; and, as so modified, affirmed.

---

4. For example, the letter from the Navy Federal Credit Union upon which the Probation Department relied provides no explanation of the amounts listed as losses in connection with loans in the names of defendant and his wife. However, the letter was arguably sufficient to establish the monetary loss resulting from defendant's use of a credit card obtained by the theft of Joshua Wright's identity and several loan accounts obtained by the theft of Freeman's identity.